317 F.2d 67
 BEAR CREEK MINING COMPANY, Defendant, Appellant,
v.
W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff, Appellee.
BOYLES BROS. DRILLING CO., Defendant, Appellant,
v.
W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff, Appellee.
 No. 6069.
 No. 6070.
 United States Court of Appeals First Circuit.
 May 13, 1963.
 
 William A. Ziegler, Jr., New York City, with whom Gabriel De La Haba, Rafael Bargano, Jr., Garrard Harris, San Juan, P. R., and Sullivan & Cromwell, New York City, were on brief, for appellants; Owen & Ward, Salt Lake City, Utah, of counsel.
 Thompson Powers, Deputy Sol. of Labor, with whom Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., Jacob I. Karro and Beate Bloch, Washington, D. C., Attys., and Morton M. Marks, Regional Atty., were on brief, for appellee.
 Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.
 ALDRICH, Circuit Judge.
 
 
 1
 In these cases the Secretary of Labor seeks to narrow the gap between the original Fair Labor Standards Act definition, "any process or occupation necessary" to the production of goods for interstate commerce, and the more restricted language of the 1949 amendment, "any closely related process or occupation directly essential * * *." 29 U.S.C.A. § 203(j). The breadth of this gap is far from clear. Cf. Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753. The district court found the defendants' activities to be within the Act, and they appeal.
 
 
 2
 Defendant Bear Creek Mining Company is a wholly-owned subsidiary of Kennecott Copper Corporation, a corporation engaged in the mining and sale of copper, and other minerals, in interstate commerce. The defendant Boyles Bros. Drilling Company is a corporation acting under contract with Bear Creek. The defendants are prospecting, or, more accurately, exploring, see Polaroid Corp. v. Commissioner, 1 Cir., 1960, 278 F.2d 148, aff'd sub nom. Jarecki v. G. D. Searle & Co., 1961, 367 U.S. 303, 81 S. Ct. 1579, 6 L.Ed.2d 859, by way of test drilling, etc., for copper on behalf of Kennecott in Puerto Rico. Admittedly defendants are not paying wages at rates called for by the Act. The sole issue is whether they come within the above-quoted 1949 definition. The district court held that they did so because "minerals cannot be extracted before they are found any more than rabbit fricassee can be produced without first catching a rabbit." Defendants do not dispute that extraction of minerals would come within the Act, but contend that their work is so far removed therefrom that any comparison with catching the rabbit is inapposite.
 
 
 3
 If remoteness, as distinguished from "closely related,"* is to be measured in terms of time, or the number of essential intervening activities, or even in terms of probabilities, defendants make a plausible case. In the past nine years defendants, or at least Bear Creek Mining Co., have conducted similar activities in various parts of the world on over 150 locations, and so far only four have indicated any substantial promise. Defendants here are engaged only in the initial stages. In dollars they appear to be operating on a low six-figure basis. The next step, should this one offer sufficient hope, would involve a two million dollar pilot plant. Thereafter, if that should pan out, an eighty million dollar investment and some six years of activities said to be fraught with problems, will still be required before minerals can be extracted.
 
 
 4
 This staggering future prospect as presented by the defendants, does not, in our opinion, mean that their present prospecting is outside the terms of the Act. Nor is it necessary to adopt the full measure of the Secretary's argument in which he resists certain distinctions advanced by the defendants between steps preliminary to producing for commerce and their eventual fruition. We rest our decision not on the necessary connection between catching the rabbit and the fricassee, but on the immediate and intimate relation between defendants' activities and Kennecott's present business.
 
 
 5
 It is axiomatic that a mine is a wasting asset. There may be exceptional cases of companies that intend, literally, to dig their own graves and go out of business, and of others so fortunately placed that they can plan for the future with no present concern about reserves. But it seems apparent that in the mineral extraction industry exploration for new sources of supply is normally a continuing need. Even companies with supposedly large reserves cannot always be sure of their quality and extent. See Galvin, The Deduction For Percentage Depletion and Exploration and Development Costs, in Tax Revision Compendium, House Committee on Ways and Means, 86th Cong., 1st Sess. 933 at 937 (1959). (That there may be underestimates as well as overestimates see McDonald, The Big New Kicker at Asarco, Fortune, Jan. 1963, 77, 81). Price fluctuations, particularly in copper, see Conklin, Non-Ferrous Metals, in Plum, ed., Investing in American Industries 28-30 (1960); 1 Resources for Freedom, Report by President's Materials Policy Commission 85 (1952); cf. N.Y. Times, National Economic Review, April 15, 1963, p. 92, col. 6 (city ed.), make even moderately high grade deposits, from time to time, economically valueless. Hearings, Depressed Domestic Mining and Mineral Industries, Subcommittee on Mines and Mining of the House Committee on Interior and Insular Affairs, 86th Cong., 1st Sess. 53 (1959); Conklin, supra, at 2, 29; Tyler, From the Ground Up 189 (1948). These factors and the great length of time needed to make new discoveries and to develop them when found, well illustrated in the case at bar, and see Jackson, Depletion and Exploration Expenses, in Tax Revision Compendium, supra, at 1027; Randall, Depletion and Exploration and Development Costs of the Mining Industry, in Tax Revision Compendium, supra, at 1033; 1 Resources For Freedom, supra, at 33, may make it desirable to carry on exploration on a regular basis even when present reserves appear fully adequate for the future. Galvin, supra, at 937; see Hearings, Depressed Domestic Mining and Mineral Industries, supra, at 130-132, 148-149; Tyler, op. cit. supra, at 207.
 
 
 6
 For reasons such as these members of the mining industry have emphasized the ordinary and regular character of exploration expenses when they have appeared before Congressional committees to urge that the income tax laws be revised to permit a mining company to deduct all exploration expenses as they are incurred (see I.R.C. of 1939 (as amended), § 23(ff); I.R.C. of 1954, § 615, as amended, 74 Stat. 333 (1960)). These expenses have been characterized as "true mining expenses," Hearings, Revenue Revision of 1950, House Committee on Ways and Means, 81st Cong., 2d Sess. 393 (1950), as "nothing more than an ordinary and necessary expense," Income Tax Revision, Panel Discussions before House Committee on Ways and Means, 86th Cong., 1st Sess. 493 (1959), and as "just as much an ordinary and necessary expense as making repairs to a building," id. at 497. See also Hearings, General Revenue Revision, House Committee on Ways and Means, 83d Cong., 1st Sess. 2073, 2075, 2099 (1953).
 
 
 7
 We recognize that none of these statements was made by defendants, or by Kennecott, and that, so far as representations to Congress are concerned, the emphasis might have been different if wage and hour legislation, rather than taxes, was under consideration. Nonetheless this is, in total, a strong picture, with at the minimum, substantial residues. If Kennecott's activities, carried on steadily for nine years, and apparently falling directly within these concepts, were in fact otherwise motivated, we think it was incumbent upon defendants so to demonstrate. On the present record we think the Secretary was correct in his conclusion that defendants were engaged in part of what was presumptively Kennecott's normal, integral operations. So viewed, no question arises.
 
 
 8
 Judgment will be entered affirming the judgment of the District Court.
 
 
 
 Notes:
 
 
 *
 If the Act read simply "necessary" there could be little question in this case. Warren-Bradshaw Drilling Co. v. Hall, 1942, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83